# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

| | |
|---|---|
| DEAN UCCARDI, individually, as Natural Parent, Guardian and Next Best Friend of I.U., a Minor, and as Assignee of John North,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONWIDE GENERAL INSURANCE COMPANY,<br><br>    Defendant. | 4:25-CV-24 |

## ORDER

Before the Court are Defendant Nationwide General Insurance Company's motion to dismiss, dkt. no. 10, and Plaintiff Dean Uccardi's motion for partial summary judgment, dkt. no. 16. The motions have been fully briefed and are ripe for review. Dkt. Nos. 10, 15, 16, 23, 24, 25, 27, 29, 33, 34. The Court heard argument on August 13, 2025. Dkt. No. 32. For the reasons set forth below, the Court **DENIES** Nationwide's motion to dismiss and **DENIES without prejudice** Plaintiff's motion for partial summary judgment.

## BACKGROUND

This case involves a dog biting incident in Richmond Hill, Georgia. Dkt. No. 1-1 ¶¶ 7-9. Plaintiff alleges that on November 21, 2021, Plaintiff's ten-year-old daughter, I.U., was playing

volleyball in her backyard when a dog, an approximately eighty-pound St. Bernard mix, escaped his neighboring yard and attacked I.U., resulting in permanent injuries. Id. ¶¶ 7–9, 13; id. at 72. John North is the dog's owner. Id. ¶ 7. Plaintiff sued North in the State Court of Bryan County, Georgia. Id. at 84.

## I. The Underlying State Court Suit

According to Plaintiff's state court complaint, the dog escaped through a hole in the fence of North's yard, which North "knew existed" and which gave the dog "immediate and direct access to Plaintiffs' yard." Id. at 85, ¶ 6. "Immediately after escaping," the dog ran into Plaintiff's yard and "viciously mauled and attacked" I.U. from behind. Id. ¶ 7. The dog "charged and bit the child multiple times as she instinctually covered her face and dropped to the ground in response to the attack." Id. ¶ 8. I.U. temporarily escaped the dog, but the dog "caught her, knocked her to the ground, and bit her on her back while she was helplessly pinned down by the weight of the dog on her hands and knees." Id. ¶ 9. At this time, the dog "tore at and ripped her clothing while dragging her approximately 10 feet across her concrete driveway on the side of the house." Id. ¶ 10.

I.U. escaped and fled from the dog again. Id. ¶ 11. The dog "chased her a third time, catching her on the steps of her home, and biting her at least one more time." Id. North "made no attempt to control his dog or intervene to stop the attack." Id. ¶ 12.

2

I.U. "suffered at least six puncture wounds as a result of the attack, a severe abrasion to her knee, bruises, a wrist injury, permanent scarring and disfigurement, and several scratch marks and lacerations as a result of the attack." Id. ¶ 13.

The underlying complaint further states that the dog attacked four other neighbors between November 2020 and June 2022, and North knew about the attacks but did nothing. Id. ¶¶ 14-21. North's neighborhood homeowner's association successfully brought a civil action against him for violations of neighborhood covenants, resulting in a court ordering North to confine his dog to the property. Id. ¶¶ 25-32. After I.U.'s attack, the dog attacked a neighbor, who he had previous attacked, and charged land surveyors who were at the neighbor's home. Id. ¶¶ 21-24.

In his lawsuit against North, Plaintiff brought claims for violation of O.C.G.A. § 51-2-7,[1] negligence, gross negligence, and punitive damages. Id. at 90-93. North, proceeding *pro se*, did not contest liability in the underlying suit, but the judge held a bench trial for damages. Id. at 96. Plaintiff received a judgment of $5,000,000 against North. Id.

---

[1] O.C.G.A. § 51-2-7 provides for liability against the "owner or keeper of [a] vicious or dangerous animal for injuries caused by [the] animal" under Georgia law.

## II. The Insurance Policy

At the time of the incident, North had a homeowners' insurance policy with Nationwide (the "Policy"). Id. at 4, ¶ 14. Nationwide did not defend North in the underlying lawsuit or attempt to settle the claims against him. Id. at 8, ¶ 31. After the state court entered the $5,000,000 judgment, Plaintiff and North entered into an assignment agreement to assign North's claims against Nationwide to Plaintiff. Id. at 98.

Under the Policy, a suit brought against the insured triggers the duty to defend if it is "for damages due to an occurrence." Id. at 44 (internal quotation marks omitted). The Policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in [b]odily injury or [p]roperty damage." Id. at 22 (internal headings and quotation marks omitted). The Policy also contains a Dog Exclusion which states that coverage does not extend to bodily injury arising out of "animals owned by or in the care, custody or control of an 'insured'" including "[a]ny dog with a prior history of attacking or biting, causing 'bodily injury' to person(s) or animal(s), as established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency." Id. at 48. Nationwide invokes this Dog

Exclusion to argue that the injury is excluded from coverage. Dkt. No. 10 at 3.

### III. The Present Federal Action

On January 31, 2025, Plaintiff, as the assignee of North's claims, brought this lawsuit against Nationwide, alleging three counts for breach of the duty to defend (Count I), breach of the duty to pay (Count II), and negligent or bad faith failure to settle (Count III), as well as a direct action as the judgment creditor (Count IV). Id. at 10–14. Plaintiff also seeks attorneys' fees and litigation expenses pursuant to O.C.G.A. § 13-6-11 (Count V). Id. at 15. Nationwide moved to dismiss because the Policy contains an exclusion for bodily injury caused by certain dogs. Dkt. No. 10. Plaintiff then moved for partial summary judgment on the duty to defend claim, Count I. Dkt. No. 16.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient

5

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016) (citing Ironworkers Local Union 68 v. AstraZeneca Pharms., LP, 634 F.3d 1352, 1359 (11th Cir. 2011)). The Court should not accept allegations as true if they merely recite the elements of the claim and declare that they are met. Iqbal, 556 U.S. at 678-79.

While the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Id. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The Court need not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Thus, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec.

6

Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The Court views the record evidence "in the light most favorable to the [nonmovant]," Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and will draw all justifiable inferences in the nonmovant's favor, Anderson, 477 U.S. at 255. Lastly, exhibits attached to pleadings become part of a pleading. Fed. R. Civ. P. 10(c). As such, a court may consider documents attached to a complaint in resolving a motion to dismiss without converting the motion to one for summary judgment. Taylor v. Appleton, 30 F.3d 1365, 1368 n.3 (11th Cir. 1994).

**DISCUSSION**

**I.   Nationwide's Motion to Dismiss is Denied.[2]**

A brief note on the lens through which the Court must view the Policy: in Georgia, an insurance policy "should be read as a layman would read it and not as it might be analyzed by an insurance

---

[2] The Policy and the underlying complaint are attached to Plaintiff's complaint, and all parties agree that they are properly considered when deciding the motion to dismiss. Dkt. No. 1-1 at 17, 84; Fed. R. Civ. P. 10(c).

7

expert or an attorney." Ga. Farm Bureau Mut. Ins. Co. v. Smith, 784 S.E.2d 422, 424 (Ga. 2016) (internal quotations and citations omitted). "The test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean." U.S. Fire Ins. Co. v. Cap. Ford Truck Sales, 355 S.E.2d 428, 429 (Ga. 1987) (internal quotation marks and citation omitted).

When the language in a contract is unambiguous, "the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." Reed v. Auto-Owners Ins. Co., 667 S.E.2d 90, 92 (Ga. 2008). However, "when a policy provision is susceptible to more than one meaning, even if each meaning is logical and reasonable, the provision is ambiguous." Smith, 784 S.E.2d at 424–25. When a provision is ambiguous, the contract "will be construed against the party preparing it and in favor of coverage." Alewine v. Horace Mann Ins., 398 S.E.2d 756, 757 (Ga. Ct. App. 1990) (citation omitted).

Finally, an insurer may "fix the terms of its policies as it sees fit, so long as they are not contrary to the law, and it may insure against certain risks while excluding others." Auto-Owners Ins. Co. v. Neisler, 779 S.E.2d 55, 59 (Ga. Ct. App. 2015) (citations omitted). "As with any insurance policy," the Court must "construe the policy exclusions most strongly against the

8

insurer and in favor of providing the indemnity sought." Murphy v. Ticor Title Ins. Co., 729 S.E.2d 21, 24 (Ga. Ct. App. 2012). Thus, "an insurer seeking to invoke a policy exclusion carries the burden of proving its applicability in a given case." First Specialty Ins. Corp., Inc. v. Flowers, 644 S.E.2d 453, 455 (Ga. Ct. App. 2007) (citation omitted). "An insurer can carry its burden of showing that a policy exclusion applies by relying exclusively upon the allegations against the insured in the underlying complaint." Id. (citation omitted).

### A. Plaintiff Adequately Alleges a Breach of the Duty to Defend.

To excuse an insurer's duty to defend, the underlying complaint "must unambiguously exclude coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy." Penn-Am. Ins. Co. v. Disabled Am. Veterans, 490 S.E.2d 374, 376 (Ga. 1997). Accordingly, "an insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage." Elan Pharm. Rsch. Corp. v. Emps. Ins. of Wausau, 144 F.3d 1372, 1375 (11th Cir. 1998) (citing Great Am. Ins. Co. v. McKemie, 259 S.E.2d 39, 40-41 (Ga. 1979)); see also, e.g., Continental Cas. Co. v. Winder Lab'ys, LLC, 73 F.4th 934, 948 (11th Cir. 2023).

"Where the claim is one of potential coverage, doubt as to liability and [the] insurer's duty to defend should be resolved in favor of the insured." Penn-Am. Ins. Co., 490 S.E.2d at 376

(citations omitted). "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." Ga. Farm Bureau Mut. Ins. Co. v. Vanhuss, 532 S.E.2d 135, 136 (Ga. Ct. App. 2000). "However, where the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit." Id. (alterations adopted).

By the terms of this Policy, Nationwide has a duty to defend if "a claim is made or a suit is brought against an insured for damages due to an occurrence resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property." Dkt. No. 1-1 at 44 (internal quotation marks omitted). An occurrence is an accident resulting in bodily injury or property damage. Id. at 22. The Policy, by its terms in the aforementioned Dog Exclusion, excludes from coverage bodily injury inflicted by a dog with a prior history of attacking or biting. Id. at 48. The allegations in the underlying complaint set forth that this dog attacked four other neighbors between November 2020 and June 2022, leading to North's homeowner's association bringing a civil action against him. Id. at 87–89, ¶¶ 14–33.

The Dog Exclusion is silent as to property damage caused by a dog and thus does not exclude it. Thus, at this juncture, the

10

question before the Court is whether the underlying lawsuit was "for damages" due to an accident resulting in property damage beyond the reach of the Dog Exclusion. Id. at 44.

Plaintiff's underlying complaint "potentially or arguably" falls within the policy's coverage because it alleges property damage in addition to I.U.'s bodily injures, and the Dog Exclusion applies only to bodily injury. Dkt. Nos. 1-1 at 7, 15 at 7. The Policy defines property damage as "physical injury to, destruction of, or loss of use of tangible property." Dkt. No. 1-1 at 23. And the underlying complaint states that the dog "tore at and ripped [I.U.'s] clothing while dragging her approximately 10 feet across her concrete driveway on the side of the house." Id. at 86. Physical injury to personal property, such as clothing, constitutes property damage. Id. at 23.[3]

Of course, to trigger the duty to defend, the underlying suit must do more than simply mention damage to tangible property; the suit must be "*for* damages due to an occurrence." Id. at 44 (emphasis added); accord Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co., 746 S.E.2d 587, 591 (Ga. 2013) (To give rise to coverage, "the insured must incur a liability to pay damages *because of such* bodily injury or property damage." (emphasis added) (alterations adopted) (internal quotation marks omitted)). Georgia

---

[3] At the hearing in this case, Nationwide conceded that damage to clothing is property damage. Dkt. No. 32.

11

law "does not allow an insured to create coverage simply by 'reinterpreting' the factual allegations made so as to come within the scope of the insurance contract." Shafe v. Am. States Ins. Co., 653 S.E.2d 870, 874 (Ga. Ct. App. 2007). Instead, the terms of the policy and the language of the underlying complaint govern the duty to defend. See Hoover v. Maxum Indem. Co., 730 S.E.2d 413, 418 (Ga. 2012); accord Vanhuss, 532 S.E.2d at 136 ("An insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured."). Thus, the Court looks at the facts as alleged and as incorporated into the underlying causes of action and highlights three places that arguably or potentially bring the suit within the ambit of coverage.

First, Plaintiff brought a claim under O.C.G.A. § 51-2-7 against North; this statute provides for liability of an owner or keeper of a "vicious or dangerous" animal for injuries caused by that animal under Georgia law. O.C.G.A. § 51-2-7. While this statute speaks in terms of injury to the person, it does not preclude recovery for property damages. Id. Under this count, Plaintiff sought from North "general damages." Dkt. No. 1-1 at 92, ¶ 43. Second, Plaintiff brought a negligence count under which he alleged "Plaintiff has sustained damages from the physical injuries sustained in the attack, *including but not limited to* consequential damages as a result of Defendant's negligent

12

actions." Id. at 93, ¶ 49 (emphasis added). Third, in the "Damages" section of the underlying complaint, Plaintiff requests "general damages" and "incidental expenses" in the prayer for relief—separate from the request for medical expenses. Id. at 95.

Crucially, Plaintiff realleges and incorporates by reference the allegation that the dog ripped I.U.'s clothing into all counts and into the separate damages section. Id. ¶¶ 10, 34, 44, 50, 53, 55. For the Court to grant Nationwide's motion to dismiss, the underlying complaint "must *unambiguously* exclude coverage under the policy." Penn-Am. Ins. Co., 490 S.E.2d at 376 (alterations adopted) (emphasis added). Plaintiff's complaint does not unambiguously exclude coverage for property damage because it alleges damage to tangible property, I.U.'s clothing. Although the harm in the underlying lawsuit largely involves I.U.'s severe bodily wounds, the law in Georgia imposes a duty to defend where the underlying allegations even "potentially or arguably" fall within the policy's coverage. Elan Pharm. Rsch. Corp., 144 F.3d at 1375. Thus, the underlying complaint *arguably* sought damages for the torn clothing, and thus the duty to defend is not fully excused by the Dog Exclusion. Thus, Nationwide's motion to dismiss is **DENIED** as to Count I.[4]

---

[4] Accordingly, the Court need not reach the parties' arguments about emotional distress or loss of use to decide the motion to dismiss and expresses no opinion on such arguments at this stage.

13

**B. Plaintiff's Complaint Sufficiently States a Claim for Breach of the Duty to Pay.**

Even if the duty to defend is triggered, "an insurer need not indemnify an insured for a liability the insured incurs outside the terms of the insurance contract." Elan Pharm. Rsch. Corp., 144 F.3d at 1375. To excuse the duty to pay, also known as the duty to indemnify, "the underlying facts adduced at trial or developed through discovery during the litigation" must demonstrate that the liability incurred is beyond the scope of coverage. Auto-Owners Ins. Co. v. Tabby Place Homeowners Ass'n, Inc., 637 F. Supp. 3d 1342, 1359 (S.D. Ga. 2022) (internal quotation marks and citations omitted); see also City of Atlanta v. St. Paul Fire & Marine Ins., 498 S.E.2d 782, 785 (Ga. Ct. App. 1998) (In determining the duty to pay, "the courts are not limited to looking at the complaint and the policy." (citation omitted)). Thus, while the duty to defend is determined by the allegations in the underlying complaint, "[t]he duty to indemnify is determined by the 'true facts' as they are established in the underlying action." Allstate Ins. Co. v. Airport Mini Mall, Ltd. Liab. Co., 265 F. Supp. 3d 1356, 1366 (N.D. Ga. 2017) (quoting ALEA London Ltd. v. Woodcock, 649 S.E.2d 740, 746 (Ga. Ct. App. 2007)) (citing Trizec Properties v. Biltmore Constr. Co., 767 F.2d 810, 812 (11th Cir. 1985)).

Plaintiff does not allege that any additional facts were "adduced at trial or developed through discovery" in his complaint

14

in this case. Tabby Place Homeowners Ass'n, Inc., 637 F. Supp. 3d at 1359. Indeed, the complaint does not contain any allegations about the facts revealed in the underlying lawsuit and merely states that the "duty to indemnify was triggered." Dkt. No. 1-1 ¶¶ 27–38. Nevertheless, in the operative complaint in this case, Plaintiff alleges that the dog, in fact, tore and ripped apart I.U.'s clothing. Id. ¶¶ 9, 13. Thus, accepting that fact as true, the Court must reasonably infer that these allegations were not contradicted by the facts as "established in the underlying action." Airport Mini Mall, Ltd. Liab. Co., 265 F. Supp. 3d at 1366. Therefore, at this stage, a portion of the indemnity—albeit a very small portion—plausibly stems from the damages for the torn damages. Accordingly, dismissal of the breach of the duty to pay claim is also unwarranted at this time, and Nationwide's motion to dismiss is **DENIED** as to Count II.

### C. Plaintiff Plausibly Alleges a Claim for Negligent or Bad-Faith Failure To Settle.

"An insurance company may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits." Cotton States Mut. Ins. Co. v. Brightman, 580 S.E.2d 519, 521 (Ga. 2003). "The elements of a negligent or bad faith failure to settle a claim are straightforward: 'The insured may sue the insurer for failure to settle only when the insurer had a duty to

settle the case, breached that duty, and its breach proximately caused damage to the insured beyond the damages, if any, contemplated by the insurance contract.'" GEICO Indem. Co. v. Whiteside, 857 S.E.2d 654, 661–62 (Ga. 2021) (quoting Delancy v. St. Paul Fire & Marine Ins. Co., 947 F.2d 1536, 1546–47 (11th Cir. 1991)).

Nationwide argues that it did not have a duty to settle because the Dog Exclusion applies and makes the pre-suit demand an invalid offer to settle. Dkt. No. 10 at 10–11; accord Swallow v. EAN Holdings, LLC, No. 3:23-cv-064, 2024 WL 4360605, at *3 (S.D. Ga. Sept. 30, 2024) (noting "there can be no negligent or bad faith failure to settle claim without coverage under an insurance policy"); Nipper v. Progressive Mt. Ins. Co., No. CV 123-085, 2024 WL 1242470, at *9 (S.D. Ga. Mar. 21, 2024) ("There can be no bad faith for failure to settle a claim where there is no coverage under the Policy."). Unlike the duty to defend which requires a comparison of the underlying complaint and the Policy, the determination of the duty to settle accounts for "all the relevant circumstances including the insurer's knowledge of facts relevant to liability and damages on the claim; the insurer's diligence in conducting a reasonable investigation to discover the relevant facts; and the terms of the settlement offer and any response by the insurer." Baker v. Huff, 747 S.E.2d 1, 6 (Ga. Ct. App. 2013).

16

Thus, accepting Plaintiff's set of facts as true, Nationwide failed to investigate the claims against North. Dkt. No. 1-1 ¶ 57. Plaintiff further attaches the "Offer of Compromise and Settlement" sent to Nationwide to the complaint. Id. at 70–81. This offer letter sets forth the facts implicating property damage; those include that the dog tore I.U.'s clothing and caused her to bleed through her jeans. Id. at 72. Plaintiff then attaches the denial of this offer sent by Nationwide. Id. at 82. Therefore, the Court must accept as true, at this stage, that Nationwide did not fully investigate the claim and that Nationwide's "knowledge of facts relevant to liability and damages on the claim" included the alleged property damage. See Baker, 747 S.E.2d at 6. Thus, the Court **DENIES** Nationwide's motion to dismiss as to Count III.

## II. Plaintiff's Motion for Partial Summary Judgment is Premature.

Under Federal Rule of Civil Procedure 56(b), a motion for summary judgment can be filed "at any time until 30 days after the close of all discovery." While summary judgment motions before the close of discovery are not prohibited, summary judgment is not appropriate "until the party opposing the motion has had an adequate opportunity to conduct discovery." Estate of Todashev by Shibly v. United States, 815 F. App'x 446, 450 (11th Cir. 2020) (citing Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841, 843 (11th Cir. 1989) (per curiam)). The purpose of this rule is to

17

provide "an additional safeguard against an improvident or premature grant of summary judgment." Id. at 453. Nevertheless, courts are authorized to grant "summary judgment prior to the filing of an answer and before discovery" if the non-movant cannot "demonstrate how discovery would have enabled her to rebut the [movant's] showing of an absence of a genuine issue of material fact." Yelder v. U.S. Dep't of Def., 164 F. App'x 914, 914 n.1 (11th Cir. 2006) (per curiam) (citing Wallace v. Brownell Pontiac-GMC Co., 703 F.2d 525, 527–28 (11th Cir. 1983)).

In this case, Nationwide has not filed an answer and has not had an adequate opportunity to conduct discovery. Indeed, the Magistrate Judge granted the consent motion to stay the parties' Federal Rule of Civil Procedure 26 reporting and discovery deadlines pending resolution of Nationwide's motion to dismiss. Dkt. No. 14 at 1. As such, the parties have not filed their Rule 26(f) report or had their Rule 26(f) conference.

Even though the Court appreciates that it could rule on the duty to defend by comparing the Policy and the underlying complaint, the Court declines to decide "an issue in isolation" because the "ultimate resolution of this case will depend on multiple interrelated issues." Glob. Dig. Sols. v. Grupo Rontan Electro, No. 18-80106, 2019 WL 8275153, at *3 (S.D. Fla. Nov. 25, 2019) (denying motion for summary judgment on a single issue because "[a] court should be aware of the full legal ramifications

18

of the issues before them, rather than making determinations in a vacuum"); accord, e.g., NCO Fin. Sys. v. Trauner, Cohen, & Thomas, LLP, No. 1:09-CV-1787, 2010 WL 11509131, at *1 (N.D. Ga. Feb. 8, 2010) (denying motion for partial summary judgment where the elements of two claims were "interrelated" because "the court [was] not willing to address one of the elements in isolation to the other elements"); Crenshaw v. Ga. Farm Bureau Mut. Ins. Co., No. 1:22-cv-25, 2023 WL 12088688, at *1 (N.D. Ga. July 11, 2023) (denying motion for partial summary judgment filed before the close of discovery because "[a]bsent a compelling reason to address these issues at this juncture, the Court's strong preference is to avoid addressing 'the issues in this case in a piecemeal manner'")

Thus, the Court **DENIES** Plaintiff's motion for partial summary judgment **without prejudice.** See Crenshaw, 2023 WL 12088688, at *1 (denying motion for partial summary judgment without prejudice even where "the resolution of the motion would have no bearing on the scope of discovery" and collecting cases where "the efficient administration" of the court's caseload warranted denying motions for partial summary judgment before the close of discovery); see also id. ("[I]t would be far more efficient if the merits of the motion were handled after the close of discovery when Defendant[] will likely file a dispositive motion as to some (if not all) of Plaintiff's remaining claims."); Fed. R. Civ. P. 1.

**CONCLUSION**

Accepting the allegations in the complaint as true and construing them in the light most favorable to Plaintiff, the Court concludes that dismissal is improper. Plaintiff's allegations set forth plausible claims for breach of the duty to settle, duty to pay, and negligent or bad faith failure to settle. For these reasons, Nationwide's motion to dismiss, dkt. no. 10, is **DENIED**. Further, Plaintiff's motion for partial summary judgment is **DENIED without prejudice**; Plaintiff will have an opportunity to re-raise his arguments at the close of discovery if he so chooses. The parties are **ORDERED** to submit their Rule 26(f) report within fourteen days.

**SO ORDERED** this 27th day of August, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA